UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FREDDIE LEE CURRY                                                                          PETITIONER

V.                                                              CIVIL ACTION NO. 3:24-CV-141-DPJ-ASH

B. WINGFIELD, WARDEN                                                                     RESPONDENT

REPORT AND RECOMMENDATION

Petitioner Freddie Lee Curry, a federal inmate, filed this petition under 28 U.S.C. § 2241 challenging the Bureau of Prisons' calculation of his sentence. As explained below, the undersigned recommends that Curry's petition be granted in part.

I.     Facts and Procedural History

In April 2008, South Carolina state authorities arrested Curry on drug-trafficking charges and for violation of his previously imposed probation. In July 2008, the state court revoked Curry's probation and sentenced him to serve a 10-year term of incarceration with the South Carolina Department of Corrections. Also in July 2008, a federal grand jury in the District of South Carolina charged Curry and others with federal drug-trafficking offenses, and a federal warrant for Curry's arrest was issued. On August 11, 2008, state authorities released Curry to the custody of the United States Marshals Service on a personal recognizance bond. The federal docket in South Carolina reflects that Curry was arrested that day; the federal warrant for Curry's arrest was returned executed reflecting his arrest on August 12, 2008. *See United States v. Curry*, No. 1:08-CR-729-CMC-4 (D.S.C.), Aug. 11, 2008 Docket Annotation; *id.* at Arrest Warrant Return [174] (D.S.C. Aug. 22, 2008).

In June 2009, Curry's federal case went to trial; the jury convicted him on three drug-trafficking charges. On March 30, 2010, the United States District Court for the District of South

Carolina sentenced Curry to a 360-month term of incarceration. *Id.* at J. [732] (D.S.C. Apr. 2, 2010).[1] Curry arrived at a federal prison on June 2, 2010, having been in continuous federal custody since his August 11, 2008 arrest. When Curry initially arrived at the BOP facility, his sentence was calculated as commencing on March 30, 2010, with jail credits from August 11, 2008, resulting in a projected release date of January 10, 2025. *See id.* at Order [1397] (D.S.C. Feb. 5, 2021) ("Defendant has received credit for time served since March 30, 2010.").

In September 2021, the BOP "discovered that [Curry] should have been returned to South Carolina State custody after he was sentenced in [federal court] to complete the 10-year violation of probation state sentence." Morrissette Decl. [13-3] ¶ 38. The BOP contacted the South Carolina Department of Corrections "to verify sentencing and jail credit information for the 10-year term." *Id.* State authorities informed the BOP that they credited Curry with service on his state probation revocation sentence from July 31, 2008, through August 9, 2014 (time he was in federal custody). South Carolina released Curry from that sentence on August 9, 2014. *Id.* at Attach. 9 (State Sentence Data).

In response to South Carolina crediting Curry's state sentence with time served in federal custody, the BOP adjusted the commencement date of Curry's federal sentence to August 9, 2014. This pushed back his projected release date to October 30, 2028. May 1, 2025 Sentence Monitoring Calculation Data [31-2] at 2.

Believing he should get credit toward his federal sentence for the time he was in federal custody beginning in August 2008, Curry filed his habeas petition in this Court on March 11, 2024. Respondent filed a response in opposition, to which Curry replied. The undersigned held a

---

[1] Curry's sentence was twice reduced by the sentencing court and ultimately commuted by President Biden to 220 months.

2

hearing on June 30, 2025; counsel for Respondent appeared in person, and Curry appeared by video conference. The Court invited Respondent to file supplemental authority on the timeliness of Curry's attempt to exhaust his administrative remedies. Due to technical issues making it difficult to hear Curry on the video conference, the Court also invited Curry to file argument responsive to Respondent's oral argument at the hearing. Those filings have been received and docketed, and the record is now closed.

II.     Analysis

Respondent says Curry's petition should be dismissed for failure to exhaust and, alternatively, denied on the merits. The undersigned disagrees on both counts.

    A.    Curry Exhausted His Administrative Remedies.

"The BOP is responsible for calculating sentencing credit, and the proper vehicle for raising . . . a challenge [to that calculation] is a petition pursuant to 28 U.S.C. § 2241." *United States v. Sonsteng*, No. 2:17-539, 2021 WL 2380054, at *1 (S.D. Tex. June 9, 2021) (citing *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000)). Before filing a § 2241 petition, "[a] federal prisoner seeking credit on his sentence . . . 'must first exhaust his administrative remedies through the'" BOP. *Castano v. Everhart*, 235 F. App'x 206, 207 (5th Cir. 2007) (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990)).

The BOP's regulations provide for a multiple-step Administrative Remedy Program that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10; *see generally id.* §§ 542.10–542.19 (Subpart B,

Administrative Remedy Program).[2] To begin the process, "an inmate shall first present an issue of concern informally to staff." *Id.* § 542.13. If informal resolution does not address the inmate's concerns, within "20 calendar days following the date on which the basis for the Request occurred," the inmate files "a formal written Administrative Remedy Request, on the appropriate form (BP-9)." *Id.* § 542.14(a). The regulations state that "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* § 542.18. Once a BP-9 is filed, "response shall be made by the Warden . . . within 20 calendar days." *Id.* Next, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). The Regional Director then has 30 calendar days to respond, *id.* § 542.18, and "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response," *id.* § 542.15(a). The General Counsel has 40 calendar days to respond to the BP-11. *Id.* § 542.18.

If, at any point during the process, "the inmate does not receive a response within the time allotted for reply . . . , the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18; *see Flores v. Lappin*, 580 F. App'x 248, 250 (5th Cir. 2014) ("[E]ven if a response to [the inmate]'s administrative remedy request was delayed, the regulations of the Bureau of Prisons provide authority for inmates who do not receive timely responses to

---

[2] The BOP has adopted a Program Statement explaining the agency's interpretation of its regulations and procedure for administering the Administrative Remedy Program. Prog. Stmt. 1330.18, Administrative Remedy Program (Jan. 6, 2014), *available at* https://www.bop.gov/policy/progstat/1330_018.pdf [https://perma.cc/FM8C-529A]; *see also Gayton v. Rivers*, No. 3:23-CV-1842-X, 2023 WL 8007387, at *2 (N.D. Tex. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 8005316 (N.D. Tex. Nov. 17, 2023).

administrative remedy submissions to pursue their appeals."); *accord Rosado v. Rickard*, No. 3:23-CV-1688, 2025 WL 924055, at *2 (M.D. Pa. Mar. 26, 2025) ("Once an appeal is deemed denied under [§ 542.18,] the inmate is required to appeal as if he had received a denial in the ordinary course to complete the administrative exhaustion process."). "The filing of an appeal to the General Counsel 'is the final administrative appeal.' 28 C.F.R. § 542.15(a). Upon completing this multi-tiered review process, a federal inmate h[a]s exhausted h[is] administrative remedies for filing a § 2241 petition." *Gayton*, 2023 WL 8007387, at *2 (citing *Gross*, 2009 WL 1675075, at *1).

The following facts were not disputed at the hearing. Curry attempted informal resolution of the sentencing-credits issue with his counselor on July 31, 2023. When that did not resolve the issue, Curry submitted a BP-9 on August 30, 2023. The BOP logged it into the system and assigned it Remedy ID number 1174961-F1 on September 1, 2023, making the Warden's response due September 21, 2023. The Warden rejected the request on September 7, 2023, because Curry "did not submit the proper number of exhibits." Pet. Ex. B [1-4] at 3. But Curry did not receive the response until October 2, 2023—after the response deadline. So under § 542.18, Curry was entitled to "consider the absence of a response to be a denial at that level" after September 21, 2023, and proceed to the next level.

He did. On September 23, 2023, Curry mailed a BP-10 to the regional office. The BOP logged it into the system and assigned it Remedy ID number 1179138-R1 on September 29,

2023, making the Regional Director's response due by October 29, 2023.³ The appeal was rejected on October 24, 2023, because Curry failed to "provide a copy of [his] institution administrative remedy request (BP-9) form or a copy of the (BP-9) response from the warden." Pet. Ex. B [1-4] at 4. But Curry did not receive the response until November 27, 2023, so under § 542.18, he was entitled to "consider the absence of a response to be a denial at that level" after October 29, 2023, and proceed to the next level.

Once again, he did. On October 29, 2023, Curry mailed a BP-11 to the central office. The BOP logged it into the system and assigned it Remedy ID number 1174961-A1 on November 2, 2023. The central office rejected it on November 3, 2023, and Curry received that rejection on November 27, 2023. At this point, Curry had fully exhausted his administrative remedies with the BOP and was free to file his habeas petition.

Respondent makes two arguments about exhaustion. First, he argues that Curry should have waited for the delayed responses to his filings and complied with their instructions to resubmit rather than proceed to the next level once the response deadlines passed. *See* Tr. [30] at 23 ("[H]e has some responsibility to follow the rules, and if he just responded and submitted it appropriately once he received it in a timely manner, then, again, all of these multiple filings and

---

³ Because the BOP assigned this BP-10 a different Remedy ID number, Respondent argues Curry did not file an appeal of his BP-9 but a new submission directly at the regional level. The BOP does not retain a copy of rejected requests, FiggsGanter Decl. [14] ¶ 8, so Respondent supports his position by pointing to summaries, or abstracts, the Administrative Remedy Clerk documented in the BOP's remedy tracking system, *id.* ¶ 14; *see* Prog. Stmt. 1330.18, Administrative Remedy Program § 13. The BP-9's abstract is "Other Sentence Computation," and the BP-10's is "I/M [inmate] Allege[s] Sentence Calculation Is Incorrect." FiggsGanter Decl. Attach. B [14-2] at 9–10. Respondent "assum[es] the information listed in the 'ABSTRACT' correctly describes the content of the submitted administrative appeal." FiggsGanter Decl. [14] ¶ 14. Respondent's *assumption* on the accuracy of the abstracts is insufficient to create an issue here, especially because the abstracts reflect the BP-9 and BP-10 essentially address the same topic: Curry's sentence calculation.

jumping to the next level could have been alleviated . . . . And when you think about the 10/2/2023 [rejection of the BP-9], I mean, you have to—the inmate knows you have to give some time for it to be delivered. It doesn't mean you receive it within 2[0] days."). But § 542.18 expressly permitted Curry to treat the non-responses as denials and move on; he was not required to wait for delayed delivery of the responses. Moreover, under § 542.15(a), Curry's time to appeal a response with which he was not satisfied began to run on "the date the Warden[ and, thereafter, Regional Director] *signed* the response." (Emphasis added.) Curry didn't receive the responses to his BP-9 or his BP-10 within the appeal windows, so the delay in returning the responses would have prevented Curry from continuing to exhaust the initial BP-9 had he waited for those responses unless the BOP, in its discretion, extended the time limit. *Id.* ("When the inmate demonstrates a valid reason for delay, these time limits may be extended."). And while, for example, the BP-9 rejection stated that Curry "may resubmit [his] request in proper form within 5 days of the date of this rejection notice," Curry did not receive the rejection notice within 5 days of its issuance, so even that right was arguably forfeited by the delay in getting Curry the response. Pet. Ex. B [1-4] at 3.[4] The Court concludes that Curry appropriately proceeded to the next level when he did not receive timely responses to his requests, and he fully exhausted his administrative remedies.[5]

---

[4] Counsel argued that Curry's time to comply with the rejection notice ran "from when he receive[d] it." Tr. [30] at 23. But that is not apparent from the face of the rejection, which is dated September 7, 2023, and says "you may submit your request in proper form within 5 days of the date of this rejection notice." Pet. Ex. B [1-4] at 3.

[5] *Alvarez v. Cox*, No. 2:23-CV-18, 2023 WL 9110918 (S.D. Tex. Nov. 3, 2023), cited by Respondent in his supplemental reply [32], is not on point. There, the petitioner filed his habeas petition before receipt of the central office's timely response to his BP-11. Curry received a timely response to his BP-11 and filed his habeas petition thereafter.

Second, for the first time at the hearing, Respondent suggested that Curry's initial BP-9 was untimely under § 542.14(a), which sets a deadline of "20 calendar days following the date on which the basis for the Request occurred." Counsel argued that Curry learned that his sentence had been recalculated in September 2022 but did not begin the administrative exhaustion process until July 2023. Tr. [30] at 38. The Court authorized Respondent to submit "authority within the Fifth Circuit that has barred a petitioner from seeking habeas relief for not filing a BP-9 within the 20-day deadline." *Id.* at 39. Respondent proffered *Shelton v. Leon*, 648 F. App'x 491 (5th Cir. 2016), a *Bivens*[6] case arising out of a June 28, 2004 incident in which another inmate "stabbed [the plaintiff] three times in the back and arm." *Shelton v. Leon*, No. 1:12-CV-461, 2014 WL 5495046, at *1 (E.D. Tex. Oct. 30, 2014). The Fifth Circuit affirmed dismissal of that lawsuit as time-barred, noting that the inmate, who "waited until 2012 to file any administrative form with the Bureau of Prisons" did not "me[e]t the twenty-day deadline for filing the BP-8 and BP-9 forms." 648 F. App'x at 492.[7]

Respondent also cited four out-of-circuit district cases. Supp. [32] at 3–4 (citing *Gay v. Terrell*, No. 12-CV-2925, 2013 WL 5437045 (E.D.N.Y. Sept. 27, 2013); *Torres v. Anderson*, 674 F. Supp. 2d 394 (E.D.N.Y. 2009); *Ford v. Spears*, No. 10-CV-1314, 2012 WL 4481739 (E.D.N.Y. Sept. 27, 2012); *Freeman v. Pullen*, 658 F. Supp. 3d 53 (D. Conn. 2023)). Like *Shelton*, each of those cases involved a discrete incident from which the 20-day period ran. *See Gay*, 2013 WL 5437045, at *3, *5 (finding June 20, 2013 "attempt to exhaust" claim for failure to provide ladder concerning February 11, 2012 incident in which plaintiff was injured

---

[6] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1999).

[7] Another case is *Huff v. Neal*, 555 F. App'x 289 (5th Cir. 2014). Respondent does not cite *Huff*, but it, like *Shelton*, involved a discrete event: an inmate-on-inmate attack following an allegedly deficient "'open investigation procedure' [that] portrayed Huff as a snitch." *Huff*, 555 F. App'x at 291.

attempting to climb into his top bunk was "initiated well beyond the 20-day filing period" and "does not constitute proper exhaustion"); *Torres*, 674 F. Supp. 2d at 396, 400 (finding plaintiff did not properly exhaust where he filed BP-9 more than two months after incident where he fell out of top bunk and injured himself); *Ford*, 2012 WL 4481739, at *6 (finding plaintiff did not properly exhaust claim related to ingestion of glass where his administrative "submissions were all denied on timeliness grounds" but ultimately excusing exhaustion); *Freeman*, 658 F. Supp. 3d at 59 (finding due-process claim relating to reincarceration following release to home confinement during COVID unexhausted where petitioner "did not raise her due process claims until more than one full year after her reincarceration" but ultimately excusing exhaustion).

Unlike the inmates in all the cases relied upon by Respondent, Curry did not suffer injury in a discrete incident. His claim, construed liberally, is that the BOP has miscalculated *and continues to miscalculate* his release date. Whether this is a material distinction is unclear on the current record. For example, the parties have not briefed, nor has the Court discovered, any opinions addressing whether Curry's claim is continuing in nature and, if so, whether that would toll § 542.14(a)'s 20-day deadline or cause a new window for administrative review to accrue. *See generally Griffith v. Bryant*, 625 F. App'x 914, 917 (10th Cir. 2015) (observing the issue "whether the continuing violation doctrine can be used to toll untimely habeas filings . . . . appears unsettled in the federal courts"); *cf. Walker v. Epps*, 550 F.3d 407, 417 (5th Cir. 2008) (applying Mississippi law and finding continuing tort doctrine inapplicable to toll the statute of limitations for § 1983 claims challenging Mississippi's execution protocol). For the reasons explained below, the Court does not address this undeveloped issue.

The Court finds Respondent waived the timeliness of Curry's BP-9. *See Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, No. 24-10699, --- F.4th ---, 2025 WL 1739491, at *3 ("Waiver

9

'is the intentional relinquishment or abandonment of a known right.'" (quoting *Morgan v. Sundance*, 596 U.S. 411, 417 (2022)). For starters, he arguably waived the argument in this proceeding by failing to raise it until oral argument. *See Jackson v. Gautreaux*, 3 F.4th 182, 188 n.1 (5th Cir. 2021) ("As we've repeatedly and emphatically held, we cannot and will not consider arguments raised for the first time at oral argument."). Regardless, if Respondent is correct about the 20-day deadline, the BOP could (and should) have denied Curry's BP-9 as untimely at the time it was filed in July 2023. It didn't. Instead, it rejected it only for failure to "submit the proper number of exhibits" and invited Curry to resubmit it with the correct number of copies. Pet. Ex. B [1-4] at 3; *see Huff*, 555 F. App'x at 293 ("Huff attempted to file a BP-9 regarding the July 12, 2007, incident on November 13, 2007. That request was rejected on November 27, 2007, as untimely because it was not filed within twenty days of the incident."). If the BOP had intended to enforce the supposed time-bar against Curry, it would *not* have given him an opportunity to resubmit his request.[8] By failing to enforce it at the administrative-remedy level, the BOP waived the 20-day deadline as a defense to Curry's claim.

Finally, even if the Court found no waiver of the timeliness issue or agreed with Respondent that Curry failed to exhaust, the Court would alternatively excuse Curry from the exhaustion requirement. *See Peal v. Riser*, No. 3:20-CV-389-CWR-FKB, 2023 WL 5285355, at *3 (S.D. Miss. July 31, 2023) (concluding § 2241 petitioner exhausted and "[a]lternatively" finding "extraordinary circumstances" "warranting a waiver of the exhaustion requirement"). The Court may excuse exhaustion "where the attempt to exhaust [administrative] remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).

---

[8] The BOP's regulations allow it to grant an inmate "an extension in filing time" for a BP-9, and by inviting Curry to resubmit a procedurally defective filing rather than denying it as untimely, the BOP effectively granted Curry such an extension. 28 C.F.R. § 542.14(b).

Exhaustion may be futile where a "claimant raises [a] constitutional claim that [the] agency would clearly reject." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (citing *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997)). It is clear, based on Respondent's position on the merits of Curry's habeas petition, that the BOP would reject Curry's administrative claim, making exhaustion futile.

On this record, the Court concludes that Curry exhausted his administrative remedies. To the extent his BP-9 was untimely filed, the BOP waived that issue. Alternatively, even if Curry did not properly exhaust, he would be excused from doing so. Either way, the Court may consider the merits of his § 2241 petition.

B.   Curry is Entitled to Habeas Relief.

Curry asks the Court to "direct[] Respondent[] to award him pretrial detention credits from August 11, 2008, forward towards his federal sentence." Am. Pet. [4] at 7. His request raises two issues: (1) when his federal sentence commenced, and (2) whether he is entitled to credit for any time in custody before the date his sentence commenced.

Starting with the sentence-commencement date, 18 U.S.C. § 3585(a) governs and provides: "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." BOP Program Statement 5880.28 explains that under this statute,

> [i]f the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

11

Morrissette Decl. [13-3] Attach. 12 (BOP Program Statement 5880.28, at Part 3.b. (Page 1 – 12)). Under the statute and the BOP's Program Statement, if Curry was in exclusive federal custody when he was sentenced on March 30, 2010, then his sentence would have commenced following sentencing. *See Arreola-Amaya v. Federal Bureau of Prisons*, 623 F. App'x 710, 710–11 (5th Cir. 2015) (where inmate was "exclusively in federal custody" at the time of his federal sentencing, "his federal sentence 'commenced' following his sentencing . . . and he should have received credit against his sentence beginning at that time, even if he received credit against his state sentence").

So was Curry in exclusive federal custody on March 30, 2010? Under the Fifth Circuit's decision in *Cain v. Menifee*, 269 F. App'x 420 (5th Cir. 2008), the Court concludes that he was.[9] Like Curry, Cain found himself facing simultaneous state and federal charges: he was arrested on state charges in August 1998 and indicted by a federal grand jury in January 1999. 269 F. App'x at 421. After the state court sentenced him concurrently to any federal sentence, Cain returned to federal court and was sentenced consecutively to his state sentence. *Id.* He was then sent directly to a federal penitentiary to serve his federal sentence. *Id.*

> However, when BOP staff reviewed Cain's file, they discovered that he had not satisfied his five-year state sentence and that the federal sentence was to run consecutively to that sentence. Therefore, on May 11, the BOP released Cain to the custody of [the State of Missouri] for service of his state sentence. . . .
>
> . . . .
>
> Cain completed his Missouri sentence on February 10, 2002, and was thereupon taken into federal custody to serve his federal sentence. . . .

---

[9] *Cain* was not selected for publication by the Fifth Circuit. "Unpublished opinions, although not precedential, may be considered persuasive authority." *United States v. Torres-Jaime*, 821 F.3d 577, 582 (5th Cir. 2016).

12

*Id.* at 421–22. After exhausting his administrative remedies, Cain filed a § 2241 petition "arguing that the BOP miscalculated the commencement date of his federal sentence and failed to give him proper credit on his federal sentence." *Id.* at 422. He argued "that he was in full federal custody before May 5, 2000—the date he was transported to USP Leavenworth to serve his federal sentence—and, therefore, his federal sentenced 'commenced' on that date." *Id.* at 423. The BOP contended that "Cain was merely 'on loan' to federal authorities from Missouri, and his state custody remained uninterrupted until February 10, 2002, when Cain completed his Missouri sentence and was taken into BOP custody" such that his "federal sentence did not 'commence' until February 10, 2002." *Id.*

The Fifth Circuit held "that although Cain was initially 'on loan' to federal authorities for short periods of time pursuant to a writ of habeas corpus ad prosequendum, Cain was in exclusive federal custody beginning on December 8, 1999, pursuant to his arrest by federal authorities." *Id.*; *see also id.* at 424 (detailing Cain's transfer between state and federal custody). "Significantly, the arrest warrant indicates that Cain was *arrested* by federal authorities on December 8, 1999." *Id.* at 424 (footnote omitted). Following his arrest by federal authorities, "Cain was . . . transported to Calloway County Jail in Kentucky and held there solely for the USMS for a period of 146 days, whereupon he was transferred to USP Leavenworth to begin his federal sentence." *Id.* The court noted that there was "no contrary evidence to indicate that Cain appeared at any subsequent federal court hearings pursuant to a writ of habeas corpus ad prosequendum," and "the evidence overwhelmingly indicates that Cain was in full federal custody beginning on December 8, 1999." *Id.*

The court went on to note that its conclusion was "supported by the further acts of the two sovereigns":

13

> First, the USMS report shows that Missouri subsequently used an ad prosequendum writ to regain custody of Cain from April 24–26, 2000. Such a request for the "loan" of Cain to Missouri authorities reflects Cain's change of custody and Missouri's consent to such a change. Second, during the federal sentencing hearing on March 31, 2000, the deputy marshal told the judge:
>
>> My understanding, Your Honor, is [Cain is] in federal custody now. The charges in [state court] were either taken care of or dismissed. They lifted their charges and *we took full custody of him*.
>
> Although certainly not dispositive, this statement shows that the marshals handling Cain believed him to be in full federal custody.

*Id.* (emphasis in *Cain*) (footnote omitted). The court thus concluded: "Cain was in federal custody beginning on December 8, 1999, and his federal sentence 'commenced' under § 3585(a) on May 5, 2000, when he was transported to USP Leavenworth to serve his federal sentence." *Id.*[10] It reached this decision despite "[t]he fact that Missouri may have credited Cain's state sentence with [some of the same] time." *Id.* at 425 n.5.

Turning to the facts of Curry's case, state authorities released him on a personal recognizance bond on August 11, 2008, "to allow this defendant to be released . . . into Federal Custody." Morrissette Decl. [13-3] Attach. 6 (Bond Order). He was arrested at that time by United States Marshal Service. Arrest Warrant Return [20-1]; *see United States v. Curry*, No. 1:08-CR-729-CMC-4 (D.S.C.), Aug. 11, 2008 Docket Annotation; Arrest Warrant Return [174] (filed Aug. 22, 2008).[11] The case caption on the Bond Order, however, does not reference the

---

[10] The court in *Cain* did not seem to consider the Program Statement providing that a sentence commences upon its imposition if the inmate is then in exclusive federal custody. Perhaps it wasn't argued to the court. But in this case, Respondent brought the Program Statement to the Court's attention. *See* Morrissette Decl. [13-3] ¶¶ 32–33. The Court disagrees with the BOP's interpretation of the Program Statement, *see id.* ¶ 39, but finds it appropriate to rely on the Program Statement, given Respondent's reliance on it.

[11] The Court notified the parties on June 4, 2025, that it was taking judicial notice of Curry's arrest warrant return from his criminal case in federal court. Order [20] at 1 n.1.

14

indictment number corresponding to the probation revocation that resulted in the then outstanding 10-year state sentence. Morrissette Decl. [13-3] Attach. 6 (Bond Order). That fact might suggest that the state did not realize it was relinquishing custody over Curry as to that sentence. Notwithstanding that issue, as in *Cain*, Curry was *not* transferred into federal custody "pursuant to a writ" and "the arrest warrant indicates that [Curry] was *arrested* by federal authorities" on August 12, 2008. *Cain*, 269 F. App'x at 424.

Other contemporaneous records support the Court's conclusion that Curry was in exclusive federal custody at the time of his sentencing. Curry submitted a page from his federal Presentence Investigation Report in support of his petition. That report explained that "[d]espite having his probation revoked in full on July 31, 2008, the United States Marshal[s] Service indicates Curry is in federal custody and no detainers have been lodged against him." Pet. Ex. D [1-6] at 2.[12] And his custody status was addressed at his March 30, 2010 sentencing hearing, at which his attorney informed the court that

> his probation was revoked on July the 31st of '08 as a result of th[]e [state] charges . . . . And he was sentenced to ten years, and then he was released to federal custody, and as the probation noted, there's no detainer or anything on him. So I'd like the court to be aware that he actually was sentenced to the department of corrections for 10 years and he's not—in effect he's not doing that time . . . .

*Id.* Ex. E [1-7] at 2. The federal docket does not reflect that a writ of habeas corpus ad prosequendum was ever issued to obtain temporary federal custody of Curry for his federal proceedings. Instead, he was in exclusive federal custody beginning on August 11, 2008.

Although Curry cited *Cain* in his initial Memorandum [1], Respondent's response fails to address it. Respondent relies on Morrissette's declaration in support of his conclusion that

---

[12] This is consistent with the United States Marshals Service's report tracking Curry's detention. Morrissette Decl. [13-3] Attach. 2 (USM Rpt.).

15

Curry's federal sentence commenced "on August 9, 2014, the date [Curry] completed his previous state term of incarceration." Resp. [13] at 6 (citing Morrissette Decl. [13-3] ¶ 39 ("[A]s [Curry] received credit towards the service of his state sentence up until August 9, 2014, he is prohibited from having a commencement date that falls at any time before August 9, 2014, as this entire period was credited towards his state sentence.")). But Morrissette's conclusion finds no support in the statute, the Program Statement, or the Fifth Circuit's jurisprudence.

Respondent called two cases to the Court's attention at the hearing. Neither helps his position here. In *Jones v. Joslin*, 635 F.3d 673, 675 (5th Cir. 2011), the court concluded that the petitioner should not receive "credit toward his federal sentences for the time spent serving his state sentence." But unlike Curry, the petitioner in *Jones* came into federal custody "pursuant to a writ of habeas corpus ad prosequendum so that he could be tried for federal charges" and was "returned to the custody of the state of Texas" following sentencing. *Jones v. Joslin*, No. 09-344, 2010 WL 11541601, at *1 (S.D. Tex. Mar. 31, 2010) (emphasis omitted), *report and recommendation adopted*, 2010 WL 11541697 (S.D. Tex. Apr. 30, 2010). The *Jones* petitioner was *not* in exclusive federal custody at the time of his sentencing, so the court's disposition of his request for time credits is inapposite.

In *Allen v. Nash*, 236 F. App'x 779 (3d Cir. 2007), the Third Circuit Court of Appeals went the other way on an issue similar to that presented in *Cain*. The petitioner in *Allen* was arrested by state officials in April 1995. After he was indicted by a federal grand jury, "[s]tate authorities delivered Allen to federal court via a writ of habeas corpus ad prosequendum." 236 F. App'x at 780 (emphasis removed). He was sentenced in federal court and returned to state custody for sentencing. In the interim, "the [USMS] mistakenly referred him to the Federal Bureau of Prisons for designation to a federal facility," so following the imposition of his state

16

sentence, state "authorities turned Allen over to the [USMS], which referred [him] to the [BOP]." *Id.* He was therefore in federal custody from July 2, 1996, until May 22, 1998, after "it was determined by BOP officials that the State of New Jersey still held primary jurisdiction over Allen by virtue of having made the earlier arrest." *Id.* Allen returned to state custody from May 22, 1998, until the completion of his state sentence on July 19, 2000, after which he was returned to federal custody. "Upon his return to federal custody, the BOP computed Allen's federal sentence as not beginning until July 20, 2000. The time he served from July 2, 1996 until July 19, 2000, roughly 4 years, all was credited to his state sentence." *Id.* at 781.

The Third Circuit found that "use of the July 20, 2000 date as the start date for the federal sentence was authorized by" 18 U.S.C. § 3585. *Id.* at 783. It pointed in particular to § 3585(b), which describes when "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention *prior to the date the sentence commences*." (Emphasis added.) But § 3585(b) presupposes a commencement date arrived at by reference to § 3585(a); subsection (b) does not itself purport to set the commencement date.

Were this Court situated in the Third Circuit, it would likely follow *Allen*. But the *Allen* decision is at odds with the Fifth Circuit's decisions in *Cain* and *Arreola-Amaya*, and while those cases are "not precedential," the Court considers them "persuasive authority" as to how the Fifth Circuit would view Curry's situation. *Torres-Jaime*, 821 F.3d at 582; *Nevarez v. Nevarez*, 664 F. Supp. 3d 680, 694 (W.D. Tex. 2023) ("[T]his Court generally follows unpublished Fifth Circuit decisions because they indicate how the Fifth Circuit might rule in a future, precedential opinion."). Respondent's reliance on § 3585(b) to *debit* an inmate's sentence after it commences because of credit given by state authorities while in federal custody conflicts with the holdings in *Cain* and *Arreola-Amaya*. "To [accept Respondent's position] would mean that [Curry's] federal

17

sentence 'commenced,' but never began to run despite his incarceration in federal prison." *Cain*, 269 F. App'x at 425 n.5. "Such a result would render the word 'commence[]' in § 3585(a) meaningless." *Id.*[13]

Applying *Cain*, and following the BOP's Program Statement, the Court finds Curry's sentence commenced on March 30, 2010—after he was sentenced in federal court. That leaves one final question: whether Curry is entitled to credit toward his federal sentence for time in federal custody between August 11, 2008, and March 30, 2010. That question *is* governed by § 3585(b), which requires the BOP to award credit for

> any time [an inmate] has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

"The Supreme Court has explained that when Congress enacted 18 U.S.C. § 3585(b), it 'made clear that a defendant could not receive a double credit for his detention time.'" *McCoy v. Withers*, 2023 WL 4424633, at *2 (S.D. Miss. Apr. 6, 2023) (quoting *United States v. Wilson*, 503 U.S. 329, 337 (1992)). It is undisputed that the State of South Carolina credited the time between August 11, 2008, and March 30, 2010, when Curry was in federal pre-sentence

---

[13] Had the BOP determined earlier that Curry should serve his state sentence first, as it did in *Cain*, the outcome might be different. *See Cain*, 269 F. App'x at 421–22 (explaining that BOP staff discovered Cain should have been sent to state prison six days after his arrival at federal prison and returned him to state custody). But the BOP did not consider the order of service of Curry's federal and state sentences until 2021. At that point, state authorities had decided to release Curry from his state sentence, which left the BOP unable to transfer him to serve a state sentence as it did in *Cain*.

detention (and before his sentence "commenced") toward his probation-revocation sentence. *See* Morrissette Decl. [13-3] Attach. 9 (State Sentence Data). The BOP, therefore, may not award Curry credit toward his federal sentence for those days.

III.   Conclusion

The Court has considered all arguments. Any not directly addressed would not have changed the outcome. As explained above, the undersigned recommends the Court grant Curry's petition in part and direct Respondent to recalculate Curry's sentence based on a sentence commencement date of March 30, 2010. The Court recommends the petition be denied as to Curry's request that the BOP award him credit for time in pre-trial detention from August 11, 2008, to March 30, 2010.

IV.   Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy[14] of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district

---

[14] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 11th day of July, 2025.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE